IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
James T. WINCH, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

James T. WINCH, Respondent.

Supreme Court

*No. 2008AP3016–D. Decided July 3, 2009.*

2009 WI 64

(Also reported in 769 N.W.2d 474.)

¶ 1. PER CURIAM. We review a stipulation executed by Attorney James T. Winch and the Office of Lawyer Regulation (OLR) pursuant to SCR 22.12. In the stipulation, Attorney Winch admits that he committed 11 counts of professional misconduct. The parties jointly request that the court impose a three-year suspension of Attorney Winch's license to practice law in this state as discipline for his misconduct and require Attorney Winch to pay restitution to an estate that Attorney Winch was retained to handle.

¶ 2. After independently reviewing the matter, we accept the stipulation and adopt the stipulated facts and conclusions of law. We agree that Attorney Winch's professional misconduct warrants a three-year suspension of his license to practice law in Wisconsin. We also agree that Attorney Winch should pay restitution for any amounts that he converted from the estate. Finally, we note that the OLR has stated that it is not seeking an assessment of costs against Attorney Winch, and we accede to that recommendation in light of the stipulated nature of the proceeding under SCR 22.12.[1]

¶ 3. Attorney Winch was admitted to practice law in Wisconsin in June 1981. He previously maintained a law practice in Mazomanie.

---

[1] SCR 22.12 provides: Stipulation.

(1) The director may file with the complaint a stipulation of the director and the respondent to the facts, conclusions of law regarding misconduct, and discipline to be imposed. The supreme court may consider the complaint and stipulation without the appointment of a referee.

(2) If the supreme court approves a stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline.

¶ 4. Attorney Winch has been disciplined on two prior occasions. He was privately reprimanded in 1992 for improperly threatening a criminal prosecution. In May 2007 Attorney Winch's license was suspended for one year for multiple trust account violations, for conversion of client funds, and for failing to cooperate in an OLR investigation. *In re Disciplinary Proceedings Against Winch,* 2007 WI 41, 300 Wis. 2d 155, 730 N.W.2d 154. That suspension remains in effect.

¶ 5. The first count addressed in the OLR's present complaint and the parties' stipulation relates to a criminal conviction in Dane County Circuit Court. In March 2008 Attorney Winch pled guilty to ten counts of possession of child pornography, a Class D felony. *State v. Winch,* Case No. 2007CV1485. The circuit court in May 2008 withheld sentence for these offenses and placed Attorney Winch on probation for a period of 15 years, with the condition that he serve one year in jail. Attorney Winch has stipulated that his criminal conduct resulting in his conviction of ten felony counts of possession of child pornography constitutes a violation of SCR 20:8.4(b).[2]

---

(3) If the supreme court rejects the stipulation, a referee shall be appointed and the matter shall proceed as a complaint filed without a stipulation.

(4) A stipulation rejected by the supreme court has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the prosecution of the complaint.

[2] SCR 20:8.4(b) states it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

¶ 6. Counts 2 through 6 of the complaint and stipulation relate to Attorney Winch's representation of L.D. concerning a civil claim by Starion Financial Wisconsin (Starion), who alleged that L.D. was required to repay a loan that she had co-signed for her nephew. Attorney Winch immediately determined that L.D. did not have a valid defense to Starion's claim, but failed to discuss his conclusion with her.

¶ 7. L.D.'s answer to Starion's complaint was due on January 24, 2007, but Attorney Winch did not file an answer until January 31, 2007. He later explained to the OLR that the answer had been late because he had been involved in a fatal car-pedestrian accident in Florida on January 20, 2007. Attorney Winch, however, never asked opposing counsel for an extension of time and never filed a motion for leave to file an untimely answer.

¶ 8. Starion filed a motion to strike the late answer in March 2007. Attorney Winch did not file a response or even inform L.D. of the motion. He later told the OLR essentially that he did not bother with opposing the motion to strike because L.D. had no valid defense to Starion's claim. Attorney Winch, however, never discussed with L.D. whether she was willing to allow a default judgment to be entered against her.

¶ 9. In January 2007 Attorney Winch had obtained from L.D. title documents for a piece of real estate so that he could prepare a quit claim deed transferring L.D.'s interest in the property to her husband in order to protect it from a subsequent judgment against L.D. L.D. signed the deed on May 5, 2007, but Attorney Winch did not record it until May 16, 2007. On May 15, 2007, however, Starion had filed a motion for default judgment. Again, Attorney Winch did not in-

form L.D. of the default judgment motion or respond to it. He also did not inform L.D. that the transfer of her interest in the real estate could potentially be voided as a fraudulent conveyance.

¶ 10. In April 2007 this court suspended Attorney Winch's license to practice law, effective May 31, 2007. Attorney Winch never informed L.D. of this fact or of his need to withdraw from representing her because of the suspension. Although his suspension took effect on May 31, 2007, Attorney Winch did not file a motion to withdraw from the L.D. representation until June 11, 2007. His motion was granted on that same date.

¶ 11. On June 14, 2007, the circuit court granted Starion's motions to strike L.D.'s untimely answer and for a default judgment against her.

¶ 12. Beginning in April 2007 and for a number of subsequent months, L.D. called Attorney Winch to request the return of her documents. Although Attorney Winch promised on multiple occasions during the spring and summer of 2007 to return them, even telling L.D. that he had her title documents "right here," he failed to do so. When Attorney Winch provided his L.D. file to the OLR in October 2007, L.D.'s title documents were not in the file. Attorney Winch was unable to explain their absence. Attorney Winch apparently was able to locate L.D.'s title documents in the summer of 2008 and returned them to her at that time.

¶ 13. Based on these stipulated facts, Attorney Winch agrees that he failed to act with reasonable diligence and promptness, in violation of SCR 20:1.3.[3] He further agrees that his failure to advise L.D. of Starion's motions to strike and for default judgment

---

[3] SCR 20:1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

and to discuss his intention not to respond to those motions violated former SCR 20:1.4(a)[4] and former SCR 20:1.2(a).[5] He also admits that his failure to explain to L.D. that she had no valid defense to Starion's claims and that the transfer of her interest in the real estate to her husband could be invalidated as a fraudulent conveyance constituted violations of former SCR 20:1.4(b).[6] In addition, Attorney Winch acknowledges that he violated former SCR 20:1.16(d)[7] by failing

---

[4] Former SCR 20:1.4(a) (effective through June 30, 2007) provided, "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

[5] Former SCR 20:1.2(a) (effective through June 30, 2007) provided:

> A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall inform a client of all offers of settlement and abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[6] Former SCR 20:1.4(b) (effective through June 30, 2007) provided, "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[7] Former SCR 20:1.16(d) (effective through June 30, 2007) provided:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

to advise L.D. that his suspension required him to withdraw from representing her and by failing to return her documents in a timely manner. Finally, Attorney Winch stipulates that he engaged in dishonesty, deceit or misrepresentation, in violation of SCR 20:8.4(c),[8] by telling L.D. on multiple occasions that he would return certain documents to her when he knew at those times that he could not locate them.

██

¶ 14. Counts 7 through 11 of the complaint and stipulation relate to Attorney Winch's handling of the estate of T.M. In the spring and summer of 2004, Attorney Winch was retained to handle the estates of A.M. and his adult son, T.M., who died less than two months after A.M.

¶ 15. There is no allegation that Attorney Winch acted improperly with respect to the administration of A.M.'s estate. That estate was closed in February 2006.

¶ 16. T.M.'s share of his father's estate was $6,231.68, which was disbursed to T.M.'s estate via a check. Attorney Winch deposited that check into his client trust account on November 11, 2004.

¶ 17. Attorney Winch never commenced any estate action in connection with T.M.'s estate, and no one was authorized to distribute any of the assets of the estate. Despite this fact, Attorney Winch wrote four checks from his trust account with notations related to T.M.'s estate. Two of those checks were payable to Attorney Winch in the total amount of $875. Attorney Winch had not earned all of these fees. A third check was payable to a funeral home, although that check was

---

[8] SCR 20:8.4(c) states it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

apparently intended to pay for A.M.'s funeral expenses as well as T.M.'s funeral expenses. The fourth check, in the amount of $250, was payable to T.M.'s brother and apparently was intended to be a personal representative fee.

¶ 18. Because of the small size of T.M.'s estate, his siblings could have distributed the assets in his estate by signing an appropriate affidavit and otherwise complying with the requirements of Wis. Stat. § 867.03. Attorney Winch could not have signed an affidavit under that statute because he did not hold any position that would have authorized him to do so. Nonetheless, Attorney Winch told the OLR that he had completed such an affidavit for T.M.'s estate. No such affidavit, however, was filed with any court or third party, nor was any such affidavit ever provided to the OLR.

¶ 19. The four checks written by Attorney Winch on the estate funds in his client trust account totaled $1,729.31 (excluding the portion of the check to the funeral home that was apparently intended to cover A.M.'s funeral expenses). Thus, without considering the propriety of those distributions, there should have been at least $4,502.37 belonging to T.M.'s estate in Attorney Winch's trust account as of December 13, 2004. By August 19, 2005, however, Attorney Winch's client trust account was overdrawn by $263.78. Consequently, all of the remaining assets of T.M.'s estate in Attorney Winch's client trust account had been used by him for purposes other than paying the lawful debts of the estate or distributing those assets to T.M.'s heirs.

¶ 20. When Attorney Winch was initially retained to handle T.M.'s estate, he informed T.M.'s siblings that any assets remaining after the payment of T.M.'s debts and the costs of administration would be distributed equally to the siblings, unless the assets would be

required to repay the state for medical assistance that T.M. might have received prior to his death. At some point, T.M.'s siblings asked Attorney Winch for his file so that they could confirm that T.M.'s estate had been handled properly. Attorney Winch never provided any documents regarding the estate to the siblings.

¶ 21. Attorney Winch told the OLR that the Wis. Stat. § 867.03 transfer affidavit he had allegedly completed had been sent to the Medicaid Recovery Program to determine if the state would make a claim against the estate for repayment of medical assistance funds paid to T.M. during his lifetime. He also told the OLR on two occasions that the estate funds in his client trust account had been exhausted through the payment of T.M.'s burial expenses, the nominal costs of administration of the estate, and the payment of a claim to the Medicaid Recovery Program. These statements were false. Attorney Winch did not make any payments to the Medicaid Recovery Program or to any other entity as repayment for medical assistance T.M. had received.

¶ 22. The OLR sent letters to Attorney Winch in October 2007 and June 2008 requesting certain information and documents relevant to its investigation concerning T.M.'s estate. After the June 2008 letter was sent a second time, Attorney Winch responded that at one point in time he had located his file for T.M.'s estate, but that it had once again become "mislocated." Attorney Winch never complied with the OLR's requests for documents relating to T.M.'s estate.

¶ 23. Attorney Winch has stipulated to five counts of misconduct with regard to his representation of T.M.'s estate and the OLR's subsequent investigation. First, by failing to hold in trust $6,231.68 of assets belonging to the estate until directed to dis-

burse the funds by a court or an authorized representative of the estate, Attorney Winch violated SCR 20:1.15(b)(1).[9] Next, Attorney Winch violated SCR 20:8.4(c) by converting at least \$4,502.37 of the estate's funds for Attorney Winch's own purposes or purposes unrelated to the estate. Also, by misrepresenting to the OLR that the estate funds in his client trust account had been exhausted through payments to the Medicaid Recovery Program, Attorney Winch violated SCR 22.03(6),[10] which is enforceable through SCR 20:8.4(h).[11] Attorney Winch's failure to provide his file for T.M.'s estate when requested to do so by T.M.'s siblings violated SCR 20:1.16(d). Finally, Attorney Winch's failure to provide the OLR with a written response containing all of the information and documents requested by the OLR constituted a violation of SCRs 22.03(2)[12] and 20:8.4(h).

---

[9] SCR 20:1.15(b)(1) provides:

> Separate account. A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients ánd 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[10] SCR 22.03(6) provides:

> In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[11] SCR 20:8.4(h) provides it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

[12] SCR 22.03(2) states:

■

¶ 24. The stipulation states that Attorney Winch agrees to the imposition of a three-year suspension of his license to practice law in Wisconsin, which is the discipline sought by the OLR's director. Attorney Winch also stipulates to pay restitution to an appropriate representative of T.M.'s estate in the amount of $6,231.68 (the total amount initially deposited into Attorney Winch's client trust account for T.M.'s estate), less any amounts that Attorney Winch can demonstrate to the OLR were appropriately paid out for legitimate debts of the estate. Given the stipulated nature of this proceeding without the need for the appointment of a referee, the OLR is not seeking an assessment of costs.

¶ 25. The OLR asserts that the stipulation was not the result of plea bargaining, but was Attorney Winch's voluntary admission of the charged misconduct and assent to the OLR's requested discipline. The stipulation also contains a number of representations by Attorney Winch. Attorney Winch states he understands the misconduct allegations against him and his right to contest those allegations; he understands the ramifications of the requested discipline in the event the court accepts the stipulation; he understands his right to consult counsel; he is entering the stipulation

---

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

knowingly and voluntarily; and he is admitting his misconduct and assenting to the level and type of discipline sought by the OLR.

¶ 26. After our independent review of the matter, we accept the stipulation. The stipulated facts clearly support the 11 counts of misconduct alleged against Attorney Winch.

¶ 27. We also conclude that a three-year suspension of Attorney Winch's license to practice law in this state is an appropriate level of discipline. Attorney Winch's multiple instances of misconduct, especially his criminal conviction, his conversion of client funds, and his misrepresentations to his client and the OLR, warrant a substantial period of suspension. *See, e.g., In re Disciplinary Proceedings Against Krezminski,* 2007 WI 21, 299 Wis. 2d 152, 727 N.W.2d 492 (imposing two-year suspension for converting client funds, knowingly offering false evidence, and failing to communicate with a client); *In re Disciplinary Proceedings Against Glynn,* 225 Wis. 2d 202, 591 N.W.2d 606 (1999) (one-year suspension imposed on attorney who, among other things, paid himself tens of thousands of dollars in excessive fees from guardianship and conservatorship estates and created documents falsely purporting to show that he had made restitution); *In re Disciplinary Proceedings Against Bruckner,* 161 Wis. 2d 385, 467 N.W.2d 780 (1991) (imposing five-month suspension on attorney criminally convicted of importing child pornography). A three-year suspension will be sufficient in this case to protect the public, to impress upon Attorney Winch the seriousness of his misconduct and the need to conform to the Wisconsin Rules of Professional Conduct for Attorneys, and to deter similar misconduct by other attorneys. We note that after the period of suspension has been completed, Attorney Winch will

420

need to complete the formal reinstatement process, which will require him to demonstrate, among other things, that he has the appropriate moral character to practice law in this state. *See* SCR 22.31 (setting forth requirements that attorney petitioning for reinstatement must prove by clear, satisfactory, and convincing evidence).

¶ 28. We further determine that the three-year suspension should be imposed as of the date of this order and not retroactively as of the expiration of Attorney Winch's prior one-year suspension. At least some of the misconduct involved in the present disciplinary proceeding occurred after the misconduct that led to the prior, one-year suspension. Moreover, we conclude that making the suspension retroactive would not be commensurate with the gravity of Attorney Winch's misconduct.

¶ 29. We also accept the provision of the stipulation requiring Attorney Winch to pay restitution to T.M.'s estate in the amount that Attorney Winch received and placed into his client trust account, less any amounts that he can demonstrate to the OLR were appropriately disbursed for legitimate debts of the estate.

¶ 30. Finally, in view of the fact that Attorney Winch stipulated to all of the counts of alleged misconduct and assented to the OLR's requested level of discipline prior to the appointment of a referee, we accede to the OLR's request that no costs be imposed on Attorney Winch.

¶ 31. IT IS ORDERED that the license of James T. Winch to practice law in Wisconsin is suspended for a period of three years, effective as of the date of this order.

¶ 32. IT IS FURTHER ORDERED that within 90 days of the date of this order, James T. Winch shall pay restitution to an appropriate representative of T.M.'s estate in the amount of $6,231.68, less any amounts that James T. Winch demonstrates to the OLR were appropriately paid for legitimate debts of the estate. If restitution to T.M.'s estate is not paid within the time specified and absent a showing to this court of his inability to pay the restitution amount within that time, the license of James T. Winch to practice law in Wisconsin shall remain suspended until further order of this court.

¶ 33. IT IS FURTHER ORDERED that to the extent he has not already done so, James T. Winch shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.